Filed 6/29/21  510PacificAve v. Weiss CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| 510PACIFICAVE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMY REBECCA WEISS,<br><br>    Defendant and Appellant. | B304369<br><br>(Los Angeles County<br> Super. Ct. No. BC694882) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Tabatabai & Miyamoto and Farzad Tabatabai for Defendant and Appellant.

Robert Miller for Plaintiff and Respondent.

Defendant Amy Rebecca Weiss, a tenant in an apartment building owned by plaintiff 510PacificAve, the fictitious name for Lindeva Living Trust dated 8/20/03, Kim W. Lu, Trustee (Owner), appeals from the judgment in a declaratory relief action filed by Owner. Weiss contends the trial court erred by denying her post-trial request for statutory damages under the City of Los Angeles Rent Stabilization Ordinance (L.A. Mun. Code,[1] ch. XV, §§ 151.00 et seq.) (LARSO) and by limiting her to $500 in attorney fees under a provision of her lease that was unilaterally amended by Owner more than a year before the present action was filed.

We conclude the trial court did not err in denying Weiss's request for statutory damages because she did not raise the issue of such damages (the determination of which requires the presentation of evidence by the parties and fact-finding by the trial court) until after the trial had been completed and the final statement of decision had been issued. We also conclude the trial court did not err in finding, based upon the record before it at the time it heard Weiss's motion for attorney fees, that the amount of recoverable fees was limited by the amended attorney fee provision of the lease, and we reject Weiss's arguments that the amended provision was an illegal contract. Accordingly, we affirm the judgment.

---

[1] Further undesignated statutory references are to chapter XV of the Los Angeles Municipal Code.

## BACKGROUND

Weiss entered into a lease agreement for a unit in the apartment building at issue on December 29, 2013, and has occupied that unit since that time. Owner did not own the building at the time Weiss entered into the lease; Owner obtained title to the building in June 2014. The building, which is located in Venice, California, is subject to LARSO.

The lease includes the following provisions that are relevant to this appeal:

- Paragraph 1 provides that the lease would continue as a leasehold until December 31, 2014, and would thereafter become a month-to-month tenancy.

- Paragraph 6 provides that only Weiss could occupy the unit, and that it would be a breach of the agreement for guests to stay in the unit for 14 or more days cumulatively during any 12-month period without the owner's written consent. It also provides that Weiss would be required to pay additional rent "at the rate of $100.00 per month or 25% (or the amount allowed under rent control) of the current monthly rent, whichever amount is greater, for the period of time that each additional guest in excess of the above named shall occupy the premises."

- Paragraph 15 provides that after the expiration of the lease period (i.e., Dec. 31, 2014), the terms and conditions of the lease

would be subject to change by the owner upon 30 days written notice.

- Paragraph 16 reiterates that the agreement would be automatically renewed from month-to-month after the expiration of the leasing period.
- Paragraph 23, before it was amended, provided that the prevailing party in any legal action or proceeding brought by either party was entitled to be reimbursed for all reasonable attorney fees and costs, but that the parties waived their right to a jury trial in order to minimize those fees.
- Paragraph 31 incorporates the "House Rules" as part of the agreement. The House Rules reiterate that no persons other than those named in the original rental agreement are permitted to occupy the premises without prior written consent of the owner.

On January 27, 2017, Owner served Weiss with a notice of change of terms of tenancy, informing her that, 30 days after service of the notice, paragraph 23 of the lease (the attorney fees provision) would be deleted and replaced with a new paragraph 23. The new paragraph 23 provides: "If any legal action or proceeding is brought by Owner or Renter related to this Agreement, the prevailing party shall be entitled to recover attorneys fees not to exceed $500.00." The paragraph no longer includes a waiver of the parties' right to a jury trial.

In July 2017, Owner filed a lawsuit (the first action or lawsuit) against Weiss, Weiss's mother (who had guaranteed the lease

4

agreement), and Weiss's then-boyfriend (who was sued as "John Doe"). The details and allegations in the first action are not relevant to this case, although a short discussion is necessary for context. Owner's complaint asserted claims based upon allegations that Weiss and her boyfriend damaged two cameras Owner had installed in common areas of the building. (*510PacificAve v. Superior Court* (July 27, 2018, B289549) [nonpub. opn.], at pp. 2-3 (*510PacificAve I*).)[2] Weiss filed a cross-complaint against Kim W. Lu (in her individual capacity and in her capacity as trustee of Owner) in January 2018, asserting claims based upon allegations that Lu had engaged in serial harassment of Weiss. (*Id.* at pp. 3-4.)

On February 12, 2018, Owner served Weiss (through her attorney) a notice of change of terms of tenancy stating: "It has come to the attention of the owner that there is an unauthorized occupant of [Weiss's unit] by the name of Filip Osowski [i.e., Weiss's then-boyfriend]." Invoking paragraph 6 of the lease, Owner gave notice that, beginning 60 days from the date of service of the notice, the rent would

---

[2] Our opinion in *510PacificAve I* arose from a writ petition filed by Owner. When Owner filed the present action, Weiss filed a notice of related case and the present action was assigned to the judge handling the first action. Owner filed a challenge to that judge in the present action, but the judge denied it, finding that the present action was a continuation of the first action. (*510PacificAve I, supra*, at pp. 6-7.) We granted Owner's writ petition, finding that the legal and factual issues raised in the present action are distinct from the legal and factual issues raised in the first action, and that "[t]he resolution of one will have no bearing on the resolution of the other." (*Id.* at p. 10.) On remand, Owner's peremptory challenge was accepted, the two cases were unrelated, and the present case was reassigned back to the originally-assigned judge.

increase by 25 percent.  Weiss immediately disputed the change of terms.

Nine days later, Owner filed the present lawsuit seeking declaratory relief regarding the applicability of paragraph 6.  The complaint described the controversy as follows:  "Owner contends that the rent increase alleged herein is governed by the terms of the lease and written agreement of the parties, and that the Tenant's refusal to pay the increase is a breach of the lease, which increase is not governed or restricted by any law or ordinance.  Owner is informed and believes and based on such information and belief alleges that the Tenant contends that the said rental increase is governed and/or restricted by a city ordinance and that she may refuse to pay the rent increase without breaching her lease."  The complaint prayed for a judgment (1) declaring that Weiss is subject to the notice of change of terms regarding the rent increase and (2) "[f]or such other relief as in the premises are proper"; Owner did not ask for attorney fees.

In her answer to the complaint, Weiss admitted there was a controversy between the parties regarding the notice of rent increase, but denied it was necessary for the court to determine and declare the rights of the parties.  The answer also asserted several affirmative defenses and prayed that (1) Owner take nothing in the lawsuit; (2) Weiss recover her costs; (3) Weiss receive all of her attorney fees incurred in her defense; and (4) Weiss "receives such other and further

6

relief as the Court feels is just and proper."[3]  Weiss did not file a cross-complaint.

A bench trial was conducted by briefs, declarations, stipulated facts, and a small number of exhibits (all of which were authenticated by stipulation, and most were admitted by stipulation).  Owner's trial brief described the relief being sought as a "judicial determination that a narrow 2011 amendment to the Los Angeles Municipal Code regulating an 'additional tenant' cannot supersede the parties' initial written agreement, is a violation of state law and unconstitutionally vague taking and infringement on the freedom of contract."  Owner noted that "[i]t is only after a judicial declaration of rights and duties here that [Owner] will file a separate action to enforce the terms of the agreement at which time and place the parties can fully probe the nature and extent of the unauthorized occupancy of the subject unit."

In her trial brief, Weiss argued that LARSO supersedes the nonconforming terms of the lease agreement, and the Owner's attempt to raise her rent violates LARSO for several reasons, both factual and legal.  Weiss concluded her trial brief by requesting that the trial court issue a declaratory judgment declaring that (1) LARSO supersedes paragraph 6 of the lease; (2) LARSO does not allow a rent increase of 25 percent, and does not allow an increase at all unless an unauthorized

---

[3]    Owner's demurrer to Weiss's original answer was sustained with leave to amend, and Weiss filed an amended answer.  The only difference between the original and amended answers is that the amended answer includes factual allegations to support Weiss's affirmative defenses.

7

guest has occupied the unit for 30 consecutive days; (3) Owner's attempt to increase the rent is an attempted pretext eviction; and (4) paragraph 6 of the lease does not authorize a permanent 25 percent increase in Weiss's rent. Weiss requested no other relief in her trial brief.

Owner filed an opposition to Weiss's trial brief, in which Owner reiterated that "[t]he only question to be resolved" is whether "the initial written agreement of [Weiss] with [Owner's] predecessor govern[s] the specific amounts to be charged for additional unauthorized occupants." Weiss's opposition to Owner's trial brief challenged Owner's interpretation of the law, and for the first time argued that Owner's unilateral amendment of the lease to cap the recoverable attorney fees also violated LARSO. She asked the court to find the amendment is void and to grant her reasonable attorney fees (under the original attorney fee provision of lease) if she were to be the prevailing party.

The trial court issued a detailed tentative decision in which the court identified the "sole issue" presented by the complaint as "whether the terms of the lease agreement as altered by Landlord on February 12, 2018 are enforceable against Tenant." The court reiterated, "To be clear, the plaintiff-Landlord seeks a *legal* determination that Tenant is 'subject to' the rent increase, not a *factual* determination that the rent increase was properly applied." After a full discussion of the applicable law, the court concluded: "Because the Notice of Change of Terms purports to increase rent in excess of the limits of LARSO section

151.06(G), the Notice is unenforceable.[4]  Paragraph 6 of the Lease Agreement is valid and enforceable to the extent that it allows rent increases for additional residents that comport with *both* the monetary limits *and* the thirty-consecutive-days-of-residence requirements of section 151.06(G).  Paragraph 6 is invalid and unenforceable to the extent that it allows rent increases that do not comport with section 151.06(G)."

Both parties filed objections to the tentative decision.  Weiss objected primarily to a portion of the tentative decision in which the court addressed Weiss's requests for relief in her trial brief; specifically, she objected to the section with the subheading entitled "The court will not grant further relief."[5]  Weiss argued that she was entitled to

---

[4]     Section 151.06.G provides, in relevant part:  "For a rental unit which has an additional tenant joining the occupants of the rental unit thereby resulting in an increase in the number of tenants existing at the inception of the tenancy:  [¶]  (a)  The landlord may increase the maximum rent or maximum adjusted rent by an amount not to exceed 10% for each additional tenant that joins the occupants of the rental unit, [subject to certain exceptions not relevant here].  [¶]  (b)  The rental unit shall not be eligible for a rent increase until the additional tenant has maintained residence in the rental unit for a minimum of thirty consecutive days."

[5]     Under that subheading, the trial court explained it could not declare more than it had because "[t]o declare anything further would require the court to further interpret both the lease agreement and LARSO," and to make various factual findings and calculations.  The court concluded, "These determinations are not appropriate given the limited scope of the declaratory relief sought in this action.  As discussed above, this is a declaratory action that seeks a narrow legal determination.  That determination has been rendered.  The court will not venture into these factual issues absent a more fully developed factual record and a mechanism to do so."

"further relief" because she requested attorney fees in her answer to the complaint. In making this objection Weiss asserted for the first time that she was entitled to reasonable attorney fees under LARSO, citing section 151.10.A.[6] (She also argued she was entitled to her reasonable attorney fees under the original attorney fee provision of the lease agreement.) Along with her objections, Weiss filed the declaration of her attorney setting forth the amount of fees she had incurred, a total of more than $71,000.

After considering the parties' objections, the trial court issued its final statement of decision. The final statement of decision was a slightly modified version of the tentative decision. One of the modifications addressed Weiss's objection regarding the court's statement that it would not grant further relief. The court added a footnote in which it explained that it edited the objected-to subheading (which now stated "The court will not grant further declaratory relief") "to clarify that nothing about this Statement of Decision makes any finding with regard to attorney fees, nor does it prevent [Weiss] from

_____

[6] Section 151.10.A. provides: "Any person who demands, accepts or retains any payment of rent in excess of the maximum rent or maximum adjusted rent in violation of the provisions of this chapter, or any regulations or orders promulgated hereunder, shall be liable in a civil action to the person from whom such payment is demanded, accepted or retained for damages of three times the amount by which the payment or payments demanded, accepted or retained exceed the maximum rent or maximum adjusted rent which could be lawfully demanded, accepted or retained together with reasonable attorneys' fees and costs as determined by the court."

filing a motion for attorney fees." The court explained it declined to rule on Weiss's arguments regarding attorney fees raised in her objections to the tentative decision because Owner did not have an opportunity to respond.

Six weeks later, Weiss filed a motion for an award of statutory damages under section 151.10.A. and attorney fees under both section 151.10.A. and the original attorney fee provision in the lease agreement; she did not address Owner's amendment of the attorney fee provision. Owner opposed the request for statutory damages, arguing that Weiss waived any such claim by failing to assert it in any prior pleading or trial brief, and in any event, section 151.10.A. did not apply under the facts of the case. Owner also opposed the request for attorney fees on the ground that the amendment to the paragraph 23 of the lease caps fees at $500, but even if it did not, the requested fees were unreasonable. In her reply, Weiss argued that Owner's amendment of paragraph 23 was invalid under section 151.09 of LARSO because Owner did not obtain her consent to the change of terms.

The trial court denied Weiss's request for statutory damages on the ground that section 151.10.A. was inapplicable under the circumstances because Weiss never filed a cross-complaint or otherwise pled a claim for statutory damages. The court observed, "If Tenant wants statutory damages under LARSO section 151.10.A, Tenant must seek a trial of that issue so that a developed factual record can be presented. Tenant may not use a post-trial motion to present factual issues to the court that need to be tried." And, because it found that section 151.10.A. was inapplicable, the court also denied Weiss's request

11

for attorney fees under that section. Addressing her request for fees under the lease agreement, the court found that Owner's amendment of the attorney fee provision was valid because section 151.09 did not apply to that amendment,[7] and therefore Weiss's recovery of attorney fees was limited to $500. On November 20, 2019, the court entered judgment setting forth its declarations (as stated in the conclusion of the statement of decision, quoted above) and awarding Weiss $500 in attorney fees and $709.05 in costs, for a total of $1,209.05.

Weiss timely filed a motion to modify or vacate the judgment, for a further or new trial, or, in the alternative, to stay entry of judgment pending further proceedings in the first action. The motion asked the trial court to revisit its ruling limiting Weiss to $500 in attorney fees and denying her statutory damages, arguing that a new trial was warranted on five grounds: (1) there was insufficient evidence to support the court's finding that the attorney fee provision of the lease agreement had properly been amended because (a) the notice of change of terms that purported to amend the attorney fee provision was not properly authenticated and (b) the presentation of evidence at trial was limited; (2) the applicability of the amended attorney fee provision should be decided in the first lawsuit rather than in the present action; (3) the trial court lacked jurisdiction to rule on the attorney fee issue because that issue is pending in the first lawsuit; (4) the trial court improperly ruled on the applicability of section 150.10.A. without taking

---

[7] Section 151.09 regulates the grounds upon which a landlord may bring an action to recover possession of a rental unit.

12

evidence, thus depriving Weiss of a fair hearing; and (5) the trial court made an error in law in determining that the amendment of the attorney fee provision of the lease was enforceable, because the amendment was illegal. In support of her motion, Weiss filed a 14-page declaration in which she recounted the various disputes she has had with Owner, accompanied by more than 60 pages of exhibits; she also submitted the declaration of her attorney recounting the conduct of the first action, which was accompanied by 700 pages of exhibits.

The trial court denied Weiss's motion. The court rejected Weiss's first argument regarding sufficiency of the evidence and the authentication of the notice of change of terms, observing that "the parties submitted a joint record and stipulated to the authenticity of all the documents therein," including the notice of change of terms, and that Weiss had not previously raised the issue of authenticity in her motion for attorney fees. As to the sufficiency of the evidence, the court noted that it was Weiss who filed the motion for attorney fees, and there was nothing that prevented her from submitting any evidence she believed was necessary to establish that the amendment of the attorney fee provision was illegal or otherwise unenforceable.[8] The court stated that it "considered the evidence that was submitted [on the attorney fee motion], and that evidence was sufficient to support a finding that the attorney fee provision modification was legal and enforceable."

---

[8] For this same reason, the trial court found that Weiss's fourth argument—that she was denied a fair hearing because she was not able to present evidence—to be "patently specious."

13

Addressing Weiss's second and third arguments, the trial court found that the doctrines of judicial estoppel and waiver barred Weiss from asserting that the enforceability of the amendment to the attorney fee provision should be determined in the first lawsuit, or that the court did not have jurisdiction to make that determination due to the pendency of the first lawsuit. The court stated: "By asking this court to make a determination about the enforceability of the attorney fee provision modification, knowing that this issue was raised or could be raised in Case #1, [Weiss] consented to this court's determination of the matter, and [Weiss] waived any future objections she might have had to such jurisdiction."

Finally, the trial court concluded that none of Weiss's arguments as to why the amendment of attorney fee provision was illegal had any merit. The court rejected Weiss's assertion that Owner's conduct in issuing the notice of change of terms was unlawful under Civil Code section 1940.2 because that statute, which makes a landlord's harassment of a tenant illegal, did not apply to Owner's conduct. The court also rejected Weiss's assertion that Owner's unilateral amendment of the attorney fee provision was against the public policy underlying LARSO, noting that to the extent LARSO prohibited properly-noticed unilateral changes of such provisions, it is pre-empted by Civil Code section 827, subdivision (a), which specifically allows such changes. The court declined to address Weiss's assertion that Owner's conduct constituted a pretext eviction, finding that Owner had not attempted to evict Weiss through the amendment to the attorney fee provision.

14

The court entered its order denying Weiss's motion on January 14, 2020.  Weiss served notice of entry of the order on February 17, 2020, which attached a file-stamped copy of the order as entered, and filed her notice of appeal from the judgment (and order denying her motion for a new trial) the following day.[9]  Owner filed a notice of cross-appeal from the judgment two days later, but subsequently dismissed the cross-appeal.

## DISCUSSION

On appeal, Weiss contends the trial court erred by failing to apply section 151.10.A., the LARSO penalty ordinance, to award her statutory damages.  She also contends the court erred when it limited her

---

[9]  Owner filed a motion in this court to dismiss Weiss's appeal as untimely, which we denied without comment.  Owner reasserts in the respondent's brief that the notice of appeal was untimely, arguing that Weiss's notice of appeal was filed more than 30 days after Owner served a "NOTICE OF RULING DENYING DEFENDANT WEISS' MOTION TO CHANGE, MODIFY OR VACATE JUDGMENT, ETC."  Attached to the notice was a copy of the tentative ruling on the motion, which the notice indicated the trial court adopted as its order.  While Owner is correct that rule 8.108 extends the time to file a notice of appeal from a judgment to 30 days after service of the order denying a motion for a new trial or of a notice of entry of that order, Owner's service of the notice of ruling did not start the 30-day clock because it was not entitled "notice of entry" and it did not attach a copy of the order actually entered as the order of the court.  (See Cal. Rules of Court, rule 8.108; *Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399 [serving a notice of ruling of denial of motion to vacate the judgment does not satisfy rule 8.108, requiring a notice of entry].)  Although the court adopted the tentative ruling as its order, before filing the order the court corrected the case number that appeared on the tentative ruling and crossed out the word "TENTATIVE" from its title.

attorney fees to $500 because the court's ruling was based upon an illegal contract. Finally, she contends the court erred by denying her motion for a new trial because there was insufficient evidence to justify the court's ruling on attorney fees. None of her contentions has merit.

A. *Statutory Penalties*

Section 151.10.A. provides, in relevant part: "Any person who demands . . . any payment of rent in excess of the maximum rent or maximum adjusted rent in violation of the provisions of this chapter, or any regulations or orders promulgated hereunder, shall be liable in a civil action to the person from whom such payment is demanded . . . for damages of three times the amount by which the payment or payments demanded . . . exceed the maximum rent or maximum adjusted rent which could be lawfully demanded . . . together with reasonable attorneys' fees and costs as determined by the court."

Weiss argues that Owner "demanded" payment of increased rent, which increase the trial court found was unlawful under LARSO. Therefore, Weiss contends she was entitled as a matter of law to statutory damages under section 151.10.A. And, because the declaratory relief action was a "civil action," she contends the trial court erred by denying her post-trial request for section 151.10.A. damages.

We have no quarrel with Weiss's assertion that statutory damages under section 151.10.A. could be awarded to a defendant in a declaratory relief action, if appropriate. But the language and legislative history of section 151.10.A. require that the defendant make

16

a claim for statutory damages *in the lawsuit* so that the landlord's liability (if any) may be determined at trial.

The language in section 151.10.A. that the landlord "shall be liable in a civil action [to the tenant] . . . for damages," while somewhat ambiguous, reasonably can be understood to mean that a tenant may recover statutory damages only by alleging a claim for damages in a civil lawsuit. The ambiguity of that language is resolved, however, by reference to the legislative history of LARSO.

When the first rent stabilization ordinance was passed, it provided that a landlord who demanded, accepted, received, or retained any payment of rent in excess of the maximum lawful rent under the ordinance was guilty of a misdemeanor punishable by a fine of not more than $500 or by imprisonment in the county jail for up to six months, or by both. (L.A. Ord. No. 151415, § 4.) That original ordinance expired by its own terms and was replaced by Ordinance No. 152120, which added chapter XV—LARSO—to the Municipal Code.

LARSO was drafted by the Los Angeles City Council's Government Operations Committee, with input from members of various divisions, departments, and offices of the City of Los Angeles. In a report[10] presented to the City Council with the committee's draft of

---

[10] After initially denying Weiss's request for judicial notice of several documents she asserted constituted the legislative history of LARSO, we informed the parties that we were considering taking judicial notice of one of the documents from Weiss's request: the Report of Government Operations Committee to the Council of the City of Los Angeles on proposed Rent Stabilization Ordinance, presented March 8, 1979. We invited the parties to submit information relevant to the propriety of taking judicial notice of the report and the tenor of that report. Both parties submitted briefing on this

the proposed ordinance, the committee stated: "A basic problem confronting the Committee was whether or not to impose criminal sanctions for violation of the proposed ordinance." (Report of Government Operations Committee to the Council of the City of Los Angeles on proposed Rent Stabilization Ordinance, presented March 8, 1979, p. 2.) The committee explained there was "strong sentiment . . . to retain, as a deterrent, the misdemeanor provisions of the original rent regulation concept," but there were concerns about the projected costs for additional staff in the City Attorney's office and for an investigation unit. (*Ibid.*) In addition, the City Attorney expressed reservations about the legality of imposing fees to recover the costs of investigation and prosecution. However, the City Attorney "informed the Committee . . . that there is no constitutional requirement that a violation of a rent regulation measure be made a misdemeanor and that it could be made a civil offense. In that case, he indicated, a tenant could be authorized to sue for damages whenever unlawful amounts of rent were demanded, accepted or received, and to raise such violation as a defense in an unlawful detainer action brought by a landlord to recover possession of a unit for failure to pay rent. In view of these considerations, it was ultimately the decision of the Committee to eliminate criminal prosecution from the proposal and to provide only civil remedies." (*Ibid.*)

---

issue and, having considered that briefing, we take judicial notice of the report.

18

In other words, section 151.10.A. was enacted to authorize a tenant "to sue for damages" if a landlord demanded, accepted, or received rent payments in excess of the amount allowed under LARSO. That is not what Weiss did here. She did not file a cross-complaint seeking statutory damages under section 151.10.A., nor did she ask for statutory damages in her trial briefs.[11] In fact, she never raised section 151.10.A. until she filed objections to the trial court's tentative decision following trial, and even then raised the statute only with regard to attorney fees. Her first mention of statutory damages under section 151.10.A. came six weeks after the trial court issued its final statement of decision, when she brought a post-trial motion seeking those damages and attorney fees.

While Weiss concedes the legislative history demonstrates the City Council "relied on tenants to file a civil lawsuit to recover" damages under section 151.10.A., she argues there is no reason to believe the Council intended that a tenant must file a separate lawsuit if there is an ongoing lawsuit. She asserts, in effect, that seeking statutory damages by means of a post-trial motion was appropriate because section 151.10.A. simply provides a formula to compute the

---

[11] We reject Weiss's assertion that her prayer for attorney fees and "such other and further relief as the Court feels is just and proper" was sufficient to assert a claim for statutory damages under section 151.10.A. First, such a general "catch-all" request is insufficient to give notice to Owner—let alone the trial court—that Weiss would seek a determination on the applicability of a specific statutory damages provision. Second, and more importantly, Code of Civil Procedure section 431.30, subdivision (c) provides that "[a]ffirmative relief may not be claimed in the answer."

19

damages and in this case no trial was necessary since all of the evidence needed to decide the issue was already part of the trial record. She is mistaken.

Weiss ignores the fact that a landlord is not liable for damages unless the landlord "demands, accepts or retains any payment of rent in excess of the maximum rent" allowed under LARSO. We express no opinion whether under the facts of this case—Owner's service on Weiss of a notice of the increase in rent in accordance with paragraph 6 of the lease agreement (to take effect in 60 days), immediately followed by Owner's filing of a declaratory relief action seeking a declaration that paragraph 6 was enforceable despite the LARSO—Owner "demanded" rent in excess of that allowed, or the time period (if any) during which such a demand was made. But those are critical issues that must be determined, and Owner was denied an opportunity to present evidence at trial on those issues because Weiss waited until after the trial was over to request statutory damages. Therefore, we find the trial court did not err by denying Weiss's post-trial motion for statutory damages under section 151.10.A.

B.    *Enforceability of Amended Attorney Fee Provision*

Weiss argues the trial court erred by finding that Owner's notice of change of terms amending the attorney fee provision was enforceable and capped her recoverable attorney fees at $500, because the amendment is an illegal contract. She contends the amendment is illegal for five reasons: (1) it violates Civil Code section 1940.2 because it is part of scheme by Owner and Owner's attorney to evict Weiss; (2) it

20

violates the public policy of LARSO because it is a pretext eviction; (3) it violates the public policy inherent in the covenant of good faith and fair dealing; (4) it is an unlawful penalty because it amounts to a forfeiture of the attorney fees she incurred; and (5) it is unconscionable.

Weiss did not make any of these arguments in her motion for attorney fees, even after Owner cited to the $500 cap in opposition to the motion. The only argument she raised—in her reply brief—was that the amendment was invalid under section 151.09, which argument the trial court correctly rejected. The first three arguments Weiss makes on appeal she raised for the first time in her motion for a new trial, arguing (as she does here) that the illegality of a contract may be raised at any time, even after judgment has been entered. (Citing *Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 148 (*Lewis & Queen*).) The last two arguments are asserted for the first time in this appeal.

It is arguable that Weiss forfeited the issue of illegality by failing to raise it in her motion for attorney fees. (See *Fomco, Inc. v. Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166 [finding that none of the decided cases hold that a court must grant a motion for a new trial on the ground of new evidence of illegality when judgment had been entered without the introduction of any evidence of illegality; the Supreme Court distinguished *Lewis & Queen* on the basis that "[i]n that case the issue of illegality was first raised *during the trial* and not for the first time on a motion for a new trial"].) We need not answer that question, however, because we conclude there is no merit to her contentions of illegality.

1. *The Amendment Does Not Violate Civil Code Section 1940.2*

Civil Code section 1940.2 provides that "[i]t is unlawful for a landlord to do any of [five specific acts] for the purpose of influencing a tenant to vacate a dwelling." (Civ. Code, § 1940.2, subd. (a).) The five acts are set forth in subdivisions (a)(1) through (a)(5). They are: (1) engaging in theft in violation of Penal Code section 484, subdivision (a); (2) engaging in extortion in violation of Penal Code section 518; (3) using (or threatening to use) force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises that would create an apprehension of harm in a reasonable person; (4) committing a significant and intentional violation of Civil Code section 1954 (which limits the circumstances in which a landlord may enter a tenant's dwelling); and (5) threatening to disclose information relating to the immigration status of a tenant or other person known to be associated with a tenant.

Weiss contends Owner's amendment of the attorney fee provision of the lease to impose a cap on fees violated Civil Code section 1940.2 because it was an "integral part of a complex and fraudulent scheme" to harass and influence Weiss to vacate her apartment. She argues that the trial court erred by focusing only on Owner's act of amending the attorney fee provision when determining whether Civil Code section 1940.2 applied. We disagree.

Weiss misapprehends the scope of Civil Code section 1940.2. The statute does not make illegal *any* conduct intended to influence a tenant to vacate a dwelling. Only conduct that falls within the five acts or conduct described in subdivisions (a)(1) through (a)5) is unlawful under

the statute. And, while subdivision (a)(3), relied upon here by Weiss, is somewhat broader than the others, it is not as broad as Weiss supposes.

To come within subdivision (a)(3) of Civil Code section 1940.2,[12] (1) a landlord must use force, make willful threats, or engage in menacing conduct; (2) that use of force, threats, or menacing conduct must constitute a course of conduct that interferes with the tenant's quiet enjoyment of the premises; and (3) that course of conduct must be such that it would create an apprehension of harm in a reasonable person. Weiss does not—and cannot—argue that the amendment of the attorney fee provision, by itself, was a use of force, a threat, or menacing conduct. Instead, she argues it was part of a "scheme" in which Owner filed two lawsuits against Weiss after amending the attorney fee provision and filed numerous motions and appeals in those case. Weiss asserts this "scheme" was "menacing" because it forced Weiss to pay significant attorney fees. But even if filing and aggressively litigating lawsuits could be deemed "menacing conduct" under Civil Code section 1940.2—which is questionable given Owner's constitutional right of petition—the amendment of a month-to-month lease agreement, *in accordance with the terms of the agreement*, to limit the recovery of contractual attorney fees cannot be considered

---

[12] The exact language of subdivision (a)(3) of Civil Code section 1940.2 is as follows: "Use, or threaten to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises in violation of Section 1927 that would create an apprehension of harm in a reasonable person. Nothing in this paragraph requires a tenant to be actually or constructively evicted in order to obtain relief."

"menacing conduct," especially when the right to any fees at all is solely derived from the agreement itself. (See *Trope v. Katz* (1995) 11 Cal.4th 274, 278 ["California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees"]; Code Civ. Proc., § 1021 ["Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties"].)

In short, the trial court did not err in concluding that Owner's amendment of the attorney fee provision in the lease agreement was not unlawful under Civil Code section 1940.2.

2.      *The Amendment Does Not Violate the Public Policy of LARSO*

Weiss contends Owner's unilateral amendment of the attorney fee provision is a pretext eviction because it is part of an alleged scheme to use the legal system to force Weiss to spend so much money on attorney fees that she will be forced to vacate her apartment. Relying upon *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75 (*Boston*), she argues the amended provision is unenforceable because it violates LARSO's public policy to prevent pretext evictions. But *Boston* is inapposite.

In *Boston*, the lease at issue included a provision stating that the landlord had the right to forfeit the agreement and terminate the tenant's right to possession for any failure by the tenant to comply with or perform any of the obligations under the lease. (*Boston, supra*, 245 Cal.App.4th at p. 78.) One of those obligations required the tenant to

obtain insurance coverage to protect the tenant for any personal injury or property damage. The tenant never obtained that insurance, and after 15 years the landlord served him with a three-day notice to perform or quit. When the tenant failed to perform within the three days, the landlord filed an unlawful detainer action. (*Ibid.*) The landlord prevailed below, but the appellate court reversed.

The appellate court held that forfeiture of a lease is allowed only when a tenant's breach of the lease is material. It found there was no material breach in the case before it because the required insurance was to protect only the tenant's interest, so the tenant's failure to obtain insurance could not have harmed the landlord. (*Boston, supra*, 245 Cal.App.4th at p. 79.) In reaching its holding, the court relied upon a long line of case law holding that a lease can be terminated only for a material breach, even if the lease includes a clause that purports to dispense with the materiality limitation. (*Id.* at p. 81.) But the court also examined the materiality requirement in the context of LARSO's objectives, which "seek[] to 'safeguard tenants from excessive rent increases' by imposing certain statutory limitations and obligations on landlords which landlords would otherwise not be subject to under normal freedom to contract principles." (*Id.* at p. 84.) The court noted as one example of those limitations that "LARSO prohibits landlords from terminating leases without one of 14 enumerated 'good causes.'" (*Ibid.*) The court found that allowing a landlord to forfeit a lease based upon a minor or trivial breach under a one-sided forfeiture provision that entirely benefits the landlord "would allow [the landlord] to strategically circumvent LARSO's 'good cause' eviction requirements

25

and disguise pretext evictions under the cloak of contract provisions." (*Id.* at p. 85.) It concluded that "LARSO's public policy goals of providing stable affordable housing to low-income Angelenos and preventing pretext evictions outweigh the free market and freedom to contract principles allowing a landlord to include a unilateral forfeiture clause in an urban residential rental contract." (*Ibid.*)

*Boston* does not assist Weiss. Unlike the situation in *Boston*, where LARSO specifically limited the landlord's right to do what the offending lease provision would allow it to do, LARSO does not address a landlord's right to include a lease provision that allows, precludes, or limits the recovery of attorney fees incurred in litigation regarding the lease. Moreover, the lease provision at issue in this case differs significantly from the lease provision in *Boston* because it is not one-sided. The amended attorney fee provision limits the recoverable attorneys for *both* parties.[13] Finally, given that landlords are not required to include any attorney fee provision at all in residential

---

[13] To the extent Weiss contends that the provision of the lease allowing Owner to amend the terms and conditions of the lease on 30 days written notice (once the leasehold ended and was converted to a month-to-month tenancy) is contrary to LARSO public policy, her contention fails. Even if she could identify a LARSO public policy that precluded such a provision (and she has not), it would be contrary to state law. (See Civ. Code, § 827, subd. (a) ["Except as provided in subdivision (b), in all leases of lands or tenements, or of any interest therein, from week to week, month to month, or other period less than a month, the landlord may, upon giving notice in writing to the tenant, in the manner prescribed by Section 1162 of the Code of Civil Procedure, change the terms of the lease to take effect, . . . as to tenancies from month to month, . . . at the expiration of not less than 30 days"].)

26

leases, amending an attorney fee provision to limit the amount that either side may recover cannot be deemed a pretext eviction.

3.    *The Amendment Does Not Violate the Covenant of Good Faith and Fair Dealing*

Weiss contends Owner's amendment of the attorney fee provision violated the covenant of good faith and fair dealing, relying upon *Cobb v. Ironwood Country Club* (2015) 233 Cal.App.4th 960 (*Cobb*) for the proposition that "the covenant prevents a party from unilaterally amending a contract to remove existing rights." Her reliance is misplaced.

In *Cobb*, the defendant country club amended its bylaws—*after it had been sued* by current and former club members—to add an arbitration provision, and then moved to compel arbitration of the members' lawsuit. (*Cobb*, *supra*, 233 Cal.App.4th at p. 962.) Although the club's bylaws included a provision allowing the bylaws to be amended, the appellate court found the amendment at issue could not be enforced, observing that "[w]hen one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." (*Id.* at p. 963.)

That certainly is a correct statement of law, but it has no bearing on the instant case. The court in *Cobb* did not conclude that *all* unilateral amendments to an agreement that allows amendments by

27

one party necessarily violate the covenant of good faith and fair dealing. Indeed, the court recognized that "'the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice.'" (*Cobb, supra,* 233 Cal.App.4th at p. 965.) In this case, there is no question Owner gave Weiss reasonable notice of the amendment of the attorney fee provision, given that Owner served the notice of change of terms six months before filing the first lawsuit against Weiss, and more than a year before filing the instant lawsuit.

Weiss argues, however, that the amendment was not fair because "the $500 Cap removed all but $500 of Weiss's right to attorney's fees, a right that was extremely valuable." Had the amendment applied to limit *only* Weiss's "right" to all of her attorney fees, we might agree that it was not fair. But the amendment capped *both* parties' entitlement to attorney fees, and it did so before any litigation was filed, i.e., before either party had incurred any attorney fees in litigation, and thus no right to reimbursement of those fees had accrued. Therefore, we find that Owner did not violate the covenant of good faith and fair dealing by amending the attorney fee provision.

4.      *The Amendment is Not an Unlawful Penalty*

Weiss contends the amended attorney fee provision is an unenforceable penalty because it results in a forfeiture without regard to the actual damage suffered. She identifies the "forfeiture" as the $80,000 in attorney fees she incurred in defending against the instant

28

lawsuit, which the amended attorney fee provision precludes her from recovering. She asserts that the amended provision provides a windfall to Owner because without it Weiss would recover from Owner the full amount of the fees. Therefore, she argues "the $500 cap permits property to be 'forfeited without regard to the actual damage suffered.'" (Citing *Ebbert v. Mercantile Trust Co. of California* (1931) 213 Cal. 496, 499.) Weiss's reasoning is faulty.

Simply put, the amended attorney fee provision did not cause Weiss to "forfeit" any attorney fees, because under the so-called "American rule" she was required to bear the cost of her own attorney fees except as provided in the contract. (See *Trope v. Katz, supra*, 11 Cal.4th at pp. 278-279.) And at the time this lawsuit was filed, the lease agreement provided that the prevailing party in litigation regarding the agreement was entitled to recover up to $500 in attorney fees. The fact that the lease agreement previously did not cap the recoverable fees does not turn the amended provision into a forfeiture clause. As discussed, both the lease agreement and state statutory law allowed Owner to amend the agreement once the leasehold ended and it became a month-to-month tenancy, as long as proper notice was given to Weiss. Owner gave proper notice of the change of terms more than a year before the instant lawsuit was filed. Therefore, the amended attorney fee provision governed the recovery of attorney fees in this lawsuit, allowing Weiss to recover up to $500 in fees.

### 5. *The Amendment is Not Unconscionable*

Weiss contends that paragraph 15 of the lease agreement, which allowed the unilateral amendment of the attorney fee provision, is unconscionable because the lease was offered on a take-it-or-leave-it basis, the terms of paragraph 15 were not highlighted, Owner did not tell Weiss in advance about the amendment, and the harm inflicted on Weiss (i.e., not being able to recover more than $80,000 in attorney fees that she incurred) has "'shocked the conscience.'"

Weiss's argument fails for two reasons.

First, paragraph 15 simply mimics statutory law. As noted, Civil Code section 827 expressly allows landlords to change the terms of any month-to-month tenancy, as long as the change does not take effect in fewer than 30 days from when notice is given. Paragraph 15 provides that after the expiration of the lease period, which is when the leasehold changes to month-to-month tenancy, the terms and conditions of the lease would be subject to change by the owner upon 30 days written notice. A lease provision that merely sets out what state statutory law provides is not an unconscionable provision.

Second, the "harm" that Weiss asserts is no more (and, in fact, slightly less given the $500 attorney fee award) than that suffered by a majority of litigants in California because our Legislature has elected to follow the "American rule" regarding attorney fees. Thus, unless one of the exceptions to the rule applies, or the litigants have contracted otherwise, each party must bear its own attorney fees. While the amount of attorney fees a party incurs might "shock the conscience," it

does not render a contractual provision limiting the recovery of those fees unconscionable.

C.    *Request for New Trial or Stay*

Weiss argues that the trial court improperly ruled on the applicability of the amended attorney fee provision because it admitted that the factual record was not adequately developed.  Therefore, she requests that this Court reverse the trial court's ruling on attorney fees and either order a new trial on the issue or order the matter stayed to allow the trial court in the first action to address the issue.  We decline to do so.  The issue of attorney fees was raised *in this lawsuit* by Weiss. It was incumbent upon her to present *with her motion for attorney fees* all of her arguments, with the evidence necessary to support them, as to why the amended attorney fee provision should not apply.  She cannot be heard now to complain that the trial court issued a ruling on her motion for attorney fees based upon the record she provided for that motion.

//

//

//

//

//

//

//

31

## DISPOSITION

The judgment is affirmed.  Respondent 510PacificAve shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.